1   Lincoln D. Bandlow (SBN: 170449)
    Lincoln@BandlowLaw.com
2   Rom Bar-Nissim (SBN: 293356)
    Rom@BandlowLaw.com
3   **Law Offices of Lincoln Bandlow, P.C.**
    1801 Century Park East, Suite 2400
4   Los Angeles, CA 90067
    Telephone: 310.556.9680
5   Facsimile: 310.861.5550

6   Attorneys for Plaintiffs and Counter-Defendants
    Edelmania Productions, LLC and Josh Edelman
7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**
10

11

12  EDELMANIA PRODUCTIONS,              Case No.: 2:22-cv-02484-ODW-PVC
    LLC, a California limited liability
13  company; and JOSH EDELMAN, an       [Assigned to the Honorable Otis D.
    individual                          Wright II]
14
                                        **JOINT REPORT PURSUANT TO**
15                    Plaintiffs,        **F.R.C.P. RULE 26(f)**

16      v.                              Date:    August 29, 2022
                                        Time:    1:30 p.m.
17  JORDAN SERVICE, an individual       Place:   Courtroom 5D, 5th Floor

18                    Defendant.

19

20  ─────────────────────────────

21

22  AND RELATED COUNTERCLAIMS

23

24

25

26

27

28

Plaintiffs and counter-defendants, Edelmania Productions, LLC ("Edelmania") and Joshua Edelman ("Edelman") (collectively "Plaintiffs"), through their counsel, and defendant and countercomplainant, Jordan Service ("Defendant"), *in pro per*, hereby submit this Joint Report following the conference of the parties required by Federal Rule of Civil Procedure Rule 16(b) and 26(f), Local Rule 26-1 and this Court's Order setting the Scheduling Conference (Dkt. No. 23).

## I.    STATEMENT OF THE CASE

### A.    Plaintiffs' Contentions

This dispute concerns Defendant's alleged fraudulent claims that he owns a copyright interest in the motion picture, *Mentally Al* (the "Picture"). Edelman was the writer, director and producer of the Picture, while Defendant served as director of photograph and Edelman also credited Defendant as a producer.

On May 16, 2018, Edelman and Defendant entered into an agreement (the "Agreement") that stated Edelman would solely own the rights to the Picture and the footage Defendant shot for the Picture. After signing the Agreement, Defendant started making numerous alleged fraudulent claims that he was a joint author of the Picture. These alleged fraudulent claims include, *inter alia*: (1) issuing takedown notices to Vimeo and Amazon to take down the Picture from their respective platforms; (2) seeking registration of the Picture with the United States Copyright Office ("USCO") as a joint work without Plaintiffs' knowledge or permission; and (3) making numerous legal claims against Plaintiffs claiming Defendant was a joint owner of the Picture.

Plaintiffs brough four claims against Defendant: (1) declaratory relief regarding the authorship and ownership of the Picture; (2) misrepresentation under 17 U.S.C. Section 512(f) regarding Defendant's takedown notice to Vimeo, which was made under the Digital Millenium Copyright Act; (3) intentional tortious interference with Plaintiffs' contractual relationship with its distributor, The Nacelle Company, Inc. d/b/a Comedy Dynamics ("Comedy Dynamics"); and (4) breach of

1  the Agreement.

2       Defendant responded by filing a countercomplaint alleging three claims:

3  (1) declaratory relief regarding the authorship and ownership of the Picture;

4  (2) breach of the Agreement; and (3) misrepresentation under 17 U.S.C. Section 201.

5       Defendant is not a joint author of the Picture because: (1) the Agreement

6  dispositively demonstrates Defendant transferred any purported interest in the

7  Picture to Edelman; (2) Defendant did not make an independently copyrightable

8  contribution to the picture; (3) Edelman was the mastermind of the Picture and

9  exclusively exercised creative control, while Defendant had none; (4) there are no

10 objective manifestations of intent by Edelman to be joint authors of the Picture with

11 Service; and (5) the audience appeal in the Picture did not turn on Defendant's

12 contributions.

13      Defendant engaged in misrepresentation under 17 U.S.C. Section 512(f) by

14 issuing the takedown notice to Vimeo (the "Vimeo Takedown Notice"), which was

15 made under the Digital Millenium Copyright Act. The Vimeo Takedown Notice

16 misrepresented Defendant's ownership interest in the Picture and that the Picture's

17 presence on Vimeo constituted infringement. Even if Defendant is a joint author of

18 the Picture (which Plaintiffs contend he is not), a joint owner of a copyrighted work

19 cannot prohibit another joint owner from licensing the work.

20      Defendant engaged in intentional interference with Plaintiffs' contractual

21 relationship with Comedy Dynamics because: (1) Defendant was aware of this

22 agreement; (2) Defendant intentionally issued the takedown notices for the Picture to

23 Vimeo and Amazon to disrupt the contractual relationship between Plaintiffs and

24 Comedy Dynamics; (3) Defendant succeeded in disrupting said contractual

25 relationship because Comedy Dynamics could no long license the Picture to various

26 platforms; and (4) Plaintiffs suffered damages because they could not reap the

27 financial benefits from the exploitation of the Picture under said agreement.

28      Defendant breached the ownership clauses of the Agreement by attempting to

1  register the Picture with the USCO as a joint work without Plaintiffs' knowledge or

2  authorization and issuing the fraudulent takedown notices to Amazon and Vimeo for

3  the Picture. As a result of Defendant's breaches, Plaintiffs suffered damages because

4  they could not reap the financial benefits from the exploitation of the Picture.

5      Plaintiffs did not breach the Agreement because the Agreement does not

6  contain an accounting clause and, due to Defendant's aforementioned breaches, any

7  duty for Plaintiffs to perform was excused.

8      Plaintiffs did not engage in misrepresentation under 17 U.S.C. Section 201

9  because no such claim exists, it is a right of attribution claim in disguise and it is

10  duplicative of the declaratory relief claims.

11     Plaintiffs request: (1) declaratory relief that (a) Edelman is the sole author of

12  the Picture; (b) Edelmania is the sole owner of the Picture; (c) Defendant's copyright

13  registration for the Picture should be invalidated; (2) damages resulting from

14  Defendant's fraudulent takedown notices; and (3) their attorneys' fees and costs.

15   **B.     Defendant's Contentions**

16     The dispute arises from the plaintiffs claim that the May 16th 2018 agreement

17  was a sale of the documentary Mentally Al, and that the agreement transfers the

18  copyright from the team of Josh Edelman, Jordan Service, and Al Lubel to be solely

19  owned by Josh Edelman. The documentary, which began production nearly 3 years

20  earlier in autumn of 2015, originates from the team of the three producers Josh

21  Edelman, Al Lubel, and Jordan Service. The May 16th, 2018 agreement was made to

22  describe the profit splits, to prepare taking the film be shopped for a sale, and to be

23  formalized at a latter date which never happened.

24     Between the autumn of 2015 and the spring of 2021, Al Lubel, Josh Edelman

25  and I worked on a joint production of the film Mentally Al.  The production of the

26  film was a self funded and Independent labor of love between two producers Josh

27  Edelman and Jordan Service with Al acting as the star, as well as a producer as it is

28  his life's worth of material and story. As producers in a joint production, Mr.

1  Edelman and I shared numerous messages about the production of the film. These

2  messages include the details of the production, post production, and elements of the

3  distribution. Some of the messages include setting up meetings, discussing the

4  editing and post-production, discussing naming our company, and other details of a

5  joint, intimate, and independent production over the course of years. These messages

6  will show that my involvement was not merely as a DP, but a deep involvement as a

7  producer.

8      Specifically, in the latter part of 2017, Josh Edelman and I were working on a

9  "pitch book" in order to get interest in the sale of a "package" of the film and a

10  proposed comedy special. The document clearly describes the copyright claim as

11  Josh Edelman, Jordan Service, and Al Lubel, and the copyright is specifically on a

12  page that describes the package we were attempting to sell with the completed

13  documentary and a total running time.

14      Further, Josh Edelman made revisions to the document. In his version of the

15  pitch book, Edelman also confirms the copyright as "Josh Edelman, Jordan Service,

16  and Al Lubel."  This confirms what the facts of the production clearly show: shared

17  intention of a joint production.

18   In the spring of 2021 as we were prepping final delivery of the film, I was

19  expecting to see the formalized deal. Upon not being offered any information, I

20  reached out requesting to see the deal. Specifically, Clause-1 of the agreement lists

21  the profit splits, and as I was not being showed any paperwork that would enforce

22  the profits splits as accurate.

23      Edelman ignored my requests to see the paperwork, I was then contacted by

24  Brian Nitzkin who introduced himself as some one who helped broker the films

25  distribution. Nitzkin said that he was aware of my services as "DP," it was at this

26  moment I was realized that Josh Edelman was re-framing my involvement in the

27  film as if I was a DP for hire, and not a producer of origin on the film.

28      I filled my just, and shared copyright claim in 2021 as the  May 16th

agreement was not being upheld and was breached, nor was it accurately being used as to the way the agreement was presented to me nearly 3 years earlier in 2018. Plaintiff's actions are in direct conflict with California Civil Code - Section 1635-1663 The interpretation of Contracts. Specifically, California Code of Civil Procedure 1636, 1637, 1638, 1639, 1640, 1641, 1642, 1643, 1644, 1645, 1646, 1647, 1648, 1649, 1650, 1651, 1652, 1653, 1654, 1655, 1657, 1659, and creates ground for theft via deception under California Penal Code 532.

The plaintiff used his position in between the distribution and production teams as well as the long period of time between the production of the film and the distribution of the film, to obfuscate the origins of the film to distributors, as well as to mislead partners. These actions constitute theft via deception under California Penal Code 532, as well as create issues for jurisdiction and venue. Alternatively in federal court, 18 U.S. Code § 1341 Fraud and Swindles specifically defines "...any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier." It is clear that Mr. Edelman made, and continues to make false claims on the origins of the production and has used private carrier communications in order to bolster his deceptions. Mr. Edelman has sought to change the nature of the production through deception, manipulation of the flow of communications.

Defense's request:

(1) (a) The court to declare the copyright to be shared between Josh Edelman, Al Lubel, and Jordan Service. (b) The court declares Josh Edelman's copyright claim invalid.

(2) The court order a trust or other entity to be created in order control the Copyright.

(3) The Trust or entity, makes an agreement with Edelmania for the period of time during the existing Comedy Dynamics deal thus validating the entire chain of title.

(4) Damages related to Plaintiffs fraudulent dealings.

(5) Reasonable attorneys fees and Costs.

**II.    SUBJECT MATTER JURISDICTION**

    **A.    Plaintiffs' Contentions**

        This action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* This Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1338(a-b) and supplemental jurisdiction under 28 U.S.C. § 1367.

    **B.    Defendant's Contentions**

        While 17 U.S.C. § 101, *et seq.* does generally apply to the case. The issue also concerns California State law, and may be proper to move to state court under 28 U.S.C. § 1367. *"(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— (1) the claim raises a novel or complex issue of State law."*

**III.    LEGAL ISSUES**

    **A.    Plaintiffs' Contentions**

        The primary legal issues in this case are: (1) whether Edelman is the sole author of the Picture or whether it is a work of joint authorship with Defendant and Al Lubel; (2) did Defendant's Vimeo Takedown Notice violate 17 U.S.C. Section 512(f); (3) did Defendants' takedown notices to Amazon and Vimeo constitute intentional interference with Plaintiffs' contractual relationship with Comedy Dynamics; (4) did Defendant breach the Agreement by registering the Picture with the USCO and issuing the takedown notices to Amazon and Vimeo; (5) whether Edelman breached the Agreement by allegedly not providing Defendant with an accounting and subsequent paperwork; (6) whether there is an actionable claim for misrepresentation under 17 U.S.C. Section 201 and (5) resulting damages, if any.

    **B.    Defendants' Contentions**

        The issues of the case are: (1) Does the May 16th Agreement transfer the copyright from Josh Edelman, Al Lubel, and Jordan Service, to be solely owned by Mr. Edelman.  (2) Do the documents submitted to the court, written from both

parties, that include the copyright as "Josh Edelman, Jordan Service, and Al Lubel,"
defend the shared Copyright claims of the defendant, and reveal the facts of
production as a joint production.  (3) Do internal inconsistencies and vagueness as to
the parties and entities at play in the May 16th agreement create competing clauses?
(4) Does the lack of providing proof for the pro-rata profit splits being consistent
with the May 16th agreement constitute breach of contract by the plaintiff. (5) Does
the use of the May 16th agreement, in a way it was not designed for at the time of
signing, constitute theft via deception under California Penal Code 532 (6) Does the
failure to register in a timely manner invalidate the Plaintiff's claim that the May 16th
agreement transferred the copyright. (7) Does the failure to limit his copyright claim
on archival footage create issues with Mr. Edelman's copyright claims. (8) Does
California Code of Civil Procedure 1636 - 1659 negate Plaintiff's claims?

## IV.    DAMAGES

### A.    Plaintiffs' Contentions

Plaintiffs' recoverable damages are all the lost revenues resulting from the
inability to exploit the Picture on Vimeo and Amazon. Plaintiffs also seek their
reasonable attorneys' fees and costs incurred as a result of this lawsuit.

### B.    Defendant's Contentions

Defendent's recoverable damages in not being able to exploit the film.
Emotional damages from intentional fraud and bad faith. Legal Fees and costs.

## V.    PARTIES AND EVIDENCE

### A.    Parties - Plaintiffs' Contentions

The parties to this case are Edelmania, Edelman and Defendant. Should
additional parties be discovered, Plaintiffs and/or Defendant will promptly join them
to this lawsuit.

**B.      Parties – Defendant's Contentions**

The parties to the case are Joshua Edelman and through Edelman, Edelmania. As well as Jordan Service, and Al Lubel. Additional parties my be discovered and joined.

**C.      Evidence - Plaintiffs' Contentions**

Plaintiffs contend that the percipient witnesses to the case are likely to be: (1) Edelman, regarding the pre-production, production and post-production of the Picture – including Defendant's involvement, Edelmania's agreement with Comedy Dynamics, the facts and circumstances surrounding the Agreement, Defendant's claims of copyright ownership, and the impact of Defendants' takedown notices to Vimeo and Amazon; (2) Defendant, regarding his involvement in the pre-production, production and post-production of the Picture, the facts and circumstances surrounding the Agreement, the facts and circumstances surrounding his legal threats to Plaintiffs, the facts and circumstances surrounding his takedown notices to Vimeo and Amazon, the facts and circumstances surrounding his registration of the Picture with the USCO, his knowledge of the agreement between Plaintiffs and Comedy Dynamics; (3) a representative from Comedy Dynamics regarding the impact Defendants' takedown notices to Vimeo and Amazon had on the exploitation of the Picture, including lost revenues; and (4) if necessary, an expert witness on Plaintiffs' lost revenues as a result of the takedown notices to Amazon and Vimeo.

Plaintiffs further contend that the key documents will relate to, *inter alia*, the pre-production, production and post-production of the Picture; the Agreement; the registrations of the Picture with the USCO; the agreement between Plaintiffs and Comedy Dynamics; the takedown notices to Vimeo and Amazon; and damages.

**D.      Evidence - Defendant's Contentions**

Defense contends that the primary witnesses will be: (1) Al Lubel, regarding the creation production, post production and distribution of the film. (2) Edelman in all matters related to the production. (3) Daniel "Dano" Marino, in all matters related

to the distribution, clearance, and production and living arrangements. (4) defendant
himself, Jordan Service (5) Gail Beckman-- Al's roommate and close friend during
the production of the film. (6) Nicole Reddinger, a make up artist. (7) Sarah
Silverman, a famous comedian who donated her time and presence in the film for Al
Lubel. (8) Judd Apatow, A comedian and director who is friends with Al Lubel and
participated in the film. (9) Brian Nitzkin, a producer at Myriad pictures who helped
to broker the deal. (10) Jon Levy, an agent at United Talent Agency who worked on
the film. (11) Grace Royer, another agent at UTA who worked on the film. (12)
Adam Leipzig, a producer who helped guide the film. (13) Orly Ravid LLM, or other
expert witness on film structuring. (14) Ana Roberts, as a representative of Comedy
Dynamics. (15) Peter Lydon, the director of the first Al Lubel documentary, A
Stand-up Life. (16) Elizabeth Shaw, a producer who previously worked with
Edelman and accused him of unethical practices.  (17) Expert witness as to the nature
of various documents surrounding films, like pitch books, treatments, and synopsis's.
  Defense contends that the key documents will relate to, inter alia, the production,
post-production, clearance process, sales strategy and communications about the
film, as well as facts about the producers.

## VI.    INSURANCE

### A.    Plaintiffs' Contentions

Plaintiffs do have insurance to cover the claims in this case.

### B.    Defendant's Contentions

Defendants do not have insurance.

## VII.    MANUAL FOR COMPLEX LITIGATION

### A.    Plaintiffs' Contentions

Plaintiff does not believe the manual for complex litigation will be necessary
for this action.

**B.    Defendant's Contentions**

The defense believes the manual for complex litigation is appropriate, and does not appreciate opposing counsel speaking for both sides.

## VIII.    MOTIONS

**A.    Plaintiffs' Contentions**

Plaintiffs have already filed: (1) a motion for judgment on the pleadings regarding the claims asserted in their Complaint (Dkt. No. 25); and (2) a motion to dismiss Defendant's Countercomplaint (Dkt. No. 24).

Should this matter proceed to discovery, Plaintiffs further anticipate filing a motion for summary judgment or, in the alternative, partial summary judgment regarding the claims asserted in both the Complaint and Countercomplaint.

**B.    Defendant's Contentions**

Defense, in pro per, submitted erroneously, by failing to meet and confer under LR 7-3 and other errors, a motion to dismiss the complaint based on failure to Adjoin the essential party: Al Lubel. This motion was submitted at the begining of the process, and Defense was not familiar with court procedures. I apolgize to the court for this misstep (DKT 16) and would like re-consideration on the failure to adjoin an essential party.

Further, I have made multiple offers to engage in ADR which have been denied by the opposing counsel.

## IX.    DISPOSITIVE MOTIONS

**A.    Plaintiffs' Contentions**

*See supra*, Section VIII.A.

**B.    Defendant's Contentions**

1. Consideration for failing to adjoin essential party in Al Lubel.

2.  The court may also re-consider Striking the copyright claims of Plaintiff,

1  as Plaintiff's copyright is improperly filed without limmitations to previous material

2  owned by NBC, CBS and other entities, that while covered under fair use, did not

3  transfer copyright to Edelman and must be limmited in a just copyright claim.

4

5  **X.    STATUS OF DISCOVERY**

6      At present, the parties have not engaged in any discovery.

7      **A.    Plaintiffs' Contentions**

8      Due to the pending motions discussed in Section VIII.A, *supra*, Plaintiffs'

9  position is that this action should not proceed to discovery, as it can be decided on

10  the pleadings. Should this matter proceeding to discovery, Plaintiffs anticipate using

11  all discovery allowed under the F.R.C.P. and, if necessary, enter into an appropriate

12  protective order.

13      **B.    Defendant's Contentions**

14      Defense argues this case must proceed to discovery, anticipates using all

15  discovery allowed under the F.R.C.P. and, if necessary, enter into an appropriate

16  protective order.

17  **XI.    DISCOVERY CUT-OFF**

18      **A.    Plaintiffs' Contentions**

19      Plaintiffs contend no discovery cut-off is needed because this case will be

20  disposed of shortly by the pending motions.

21      **B.    Defendant's Contentions**

22      Defense believes that discovery will be complex and time consuming due to

23  the nature of case and the VIP nature of the people involved. However, due to my

24  pro se status it is hard for me to estimate the time span needed as I am not

25  completely familiar with the all the procedures. If it seems reasonable to accomplish

26  before, July 1, 2023, then that would be the date I propose for discovery cut off.

27

28

## XII.  **EXPERT DISCOVERY**

### A.    **Plaintiffs' Contentions**

Plaintiffs contend no discovery cut-off is needed because this case will be disposed of shortly by the pending motions.

### B.    **Defendant's Contentions**

Defense contends that expert discovery will be time consuming and detailed to industry norms on creative, accounting, producing, clearance, and other documents, as well as those document's standard creation practices, how the documents apply typically to a project, and how these standards relate to  Mentally Al. This process should be completed by 9/1/2023.

## XIII.    **SETTLEMENT CONFERENCE/ADR**

### A.    **Plaintiffs' Contentions**

Prior to filing this lawsuit, Plaintiffs sent Defendant an extensive settlement letter that laid out the basis of Plaintiffs' claims and a potential resolution of the dispute. Defendant did not respond. Since then, the parties have not engaged in settlement discussions.

On numerous occasions, Defendant has requested that the parties enter into ADR. At present (and considering the pending motions discussed in Section VIII.A., *supra*), Plaintiffs believe ADR is premature. Should the matter proceed to discovery, Plaintiffs believe ADR will be appropriate prior to the deadline for a motion for summary judgment. Plaintiffs are amenable to using the Court's ADR Procedure No. 3.

### B.    **Defendant's Contentions**

Prior to the suite I have engaged with Edelman and his representation about settling the issue. I have proposed on numerous occasions a solution that would upheld the distribution agreement from Comedy Dynamics, by putting the copyright into an entity controlled by the team of Edelman, Lubel, and Service, which can then

license the film to Edelmania, justifying the entire chain of the title and quelling any dispute. This solution has been completely ignored.  Instead, opposing counsel's potential resolution of the dispute was completely one sided being summed up as drop everything and pay our extensive legal fees.

   That being said, I have looked to mediation and arbitration since before the suite was filed, and since it has been filed I have requested ADR on multiple occasions which has been denied. I prefer ADR options 2, and then 1.

## XIV.   TRIAL ESTIMATE

### A.    Plaintiffs' Contentions

Plaintiffs contend that the bench trial for this matter should take approximately 3-4 days.

### B.    Defendant's Contentions

Defense contends the trial may take two or three weeks.

## XV.   TRIAL COUNSEL

### A.    Plaintiffs' Counsel

Lincoln Bandlow and Rom Bar-Nissim

### B.    Defendant's Counsel

Pro Se  (Though in the pool of selection for Pro Bono representation from California Lawyers for the Arts. )

## XVI.   MAGISTRATE JUDGE

### A.    Plaintiffs' Contentions

Plaintiffs respectfully do not consent to a Magistrate Judge for trial.

### B.    Defendant's Contentions

Defense consents to a Magistrate Judge for trial.

**XVII. <u>CLASS ACTIONS</u>**

      **A.**    <u>**Plaintiffs' Contentions**</u>

Not applicable.

      **B.**    <u>**Defendant's Contentions**</u>

Maybe needed if copyright with out limitation to pre-exsting footage is granted.


**XVIII. <u>OTHER ISSUES</u>**

      **A.**    <u>**Plaintiffs' Contentions**</u>

Presently, Defendant does not have legal counsel. According to Defendant, the California Lawyers for the Arts are in the process of matching Defendant with counsel. Plaintiffs firmly believe that Defendant has not and cannot obtain counsel because any qualified attorney would advice Defendant of the lack of merit to any of Defendant's positions. Thus, Plaintiffs are uncertain whether Defendant will ever be able to retain counsel and, if he were, how it may affect or complicate the status or management of the case.

      **B.**    <u>**Defendant's Contentions**</u>

The defense is not in good financial standing due to the facts surrounding the case, as well as other factors including the fall out from the Covid-19 pandemic. It's of absolute fact that I had a lawyer that was ready and willing to take on the case, but any lawyer taking on a federal trial case costs upwards of 15,000$ just in order to retain. All of the attorneys I have been in contact with estimated a trial to start at 50,000$ in legal fees, and would be hesitant to be bonded to a client that cannot pay, which I cannot. It is also my contention that the plaintiff's know the costs of a case, and use the costs to pressure compliance to their views.

Defense also contends, that opposing counsel is making a legal conclusion not based on any fact, merit, nor authority. Yet, the lack of representation does create additional problems and delays in the procedures. Specifically, by not having

representation it severely limits good faith negotiations. I am in the pool for Pro-
Bono representation from California Lawyers For the Arts.

      As a pro se, defense I thank the court for it's continued patience, and ask to
be given the opportunity to amend any procedural errors and submissions.


      WHEREUPON, the parties hereby jointly submit this Joint Report.


Dated: August 8, 2022                    **Law Offices of Lincoln Bandlow**

                                By _____
                                    LINCOLN D. BANDLOW
                                    ROM BAR-NISSIM
                                    Attorneys for Plaintiffs and
                                    Counter-Defendants


Dated: August 8, 2022


                                By _____
                                    JORDAN SERVICE
                                    Defendant and
                                    Countercomplainant
                                    *In Pro Per*


      Pursuant to Civil L.R. 5-4.3.4(a)(2)(i), the filer attests that all other
signatories listed, and on whose behalf this filing is submitted, concur in the filing's
content and have authorized the filing.

1

## **PROOF OF SERVICE**

2

### **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3        I, the undersigned, declare that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years and not a party to the within action or proceeding.  My business address is the law firm of The Law

4    Offices of Lincoln Bandlow, P.C., 1801 Century Park East, Suite 2400, Los Angeles, CA 90067.

5
     On August 15, 2022, I served the following document(s) **JOINT REPORT**
6    **PURSUANT TO F.R.C.P. RULE 26(f)**

7

| | |
|---|---|
| 8   Jordan Service<br>7111 Santa Monica Blvd.<br>9   Suite B #125<br>West Hollywood, CA 9004603458<br>10   Email: jordanservice@gmail.com | Pro Per Defendant and Counter-Complainant |

11        **[X]**   ***MAIL*** by placing the a copy of the document identified above in a sealed envelope to the person(s) at the address(es) set forth below, with
12    postage thereon fully prepaid.  I am familiar with the practice at my place of business for collection and processing of correspondence for mailing
13    with the United States Postal Service.  Such correspondence will be deposited with the United States Postal Service at Los Angeles, California
14    on the same day in the ordinary course of business.

15        **[X]**      **BY EMAIL:** I attached the document(s) to an email sent to the email
16    addresses set forth above

17        I declare under penalty of perjury that the foregoing is true and correct and a member of the bar of this Court.
18
19            Executed this August 8, 2022, at Encino, CA.

20

21                                        _____

22                                            Lincoln Bandlow

23

24

25

26

27

28