O

# United States District Court
# Central District of California

| | |
|---|---|
| EDELMANIA PRODUCTIONS, LLC et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>JORDAN SERVICE,<br><br>        Defendant. | Case № 2:22-cv-02484-ODW (PVCx)<br><br>**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COMPLAINT [25] AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIM [24]** |

## I.    INTRODUCTION

Plaintiffs Josh Edelman and Edelmania Productions, LLC initiated this suit against Defendant Jordan Service, and Service, proceeding pro se, answered and counterclaimed against Plaintiffs. (*See* Compl., ECF No. 1; Answer & Countercl., ECF No. 22.) Plaintiffs move for judgment on the pleadings as to their Complaint under Federal Rule of Civil Procedure ("Rule") 12(c), (Mot. J., ECF No. 25), and also to dismiss Service's Counterclaim under Rule 12(b)(6), (Mot. Dismiss, ECF No. 24). For the following reasons, the Motion for Judgment on the Pleadings is **DENIED**, and the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.[1]

---

[1] Having carefully considered the papers filed in connection with the motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

For purposes of Plaintiffs' Rule 12(b)(6) and Rule 12(c) motions, the Court accepts Service's well-pleaded counterclaim allegations as true. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (Rule 12(b)(6)); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (Rule 12(c)). By contrast, for the purpose of Plaintiffs' Rule 12(c) motion, the Court accepts as true the allegations in Plaintiffs' Complaint to the extent Service had an opportunity to respond and did not object. *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002).

Plaintiffs request judicial notice of the pleadings and attached exhibits in this case. (Reqs. Judicial Notice, ECF Nos. 24-4, 25-2.) Service does not object or oppose. (*See generally* Opp'n, ECF No. 28.) The Court takes judicial notice of the copyright registrations, as documents issued by the Copyright Office. *See* Fed. R. Evid. 201; *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1063 (C.D. Cal. 2017). The Court does not take judicial notice of the pleadings in this case, but instead considers them pursuant to the appropriate legal standards. Finally, the remaining documents Plaintiffs identify in their Requests are materials that have been incorporated by reference in the Complaint or Counterclaim, and the Court considers them accordingly. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

### A. FACTUAL BACKGROUND

Edelman and Service are both producers and directors in the movie industry. (Countercl. ¶ 1.) In 2015, Edelman contacted Service regarding filming a documentary about comedian Al Lubel ("Documentary"). (*Id.* ¶¶ 3–5.) In the beginning, Edelman and Service discussed the Documentary as a co-production, with Edelman acting as the director and producer, and Service as the cinematographer and

producer. (*Id.* ¶ 6.) Filming began in 2016, and by 2017, Edelman and Service were completing post-production. (*Id.* ¶¶ 7–8.)

In December 2017, Edelman and Service developed pitch decks to market the Documentary. (*Id.* ¶¶ 8–9.) Service added a copyright notice to the draft pitch deck. (Compl. ¶¶ 24–26; Answer 4:5.[2]) Edelman did not object. (Answer 4:5.) Thus, the draft pitch deck, dated December 8, 2017, and the revised pitch deck, dated December 31, 2017, both included: "(c) 2017 Joshua Edelman, Jordan Service, Al Lubel." (*See* Compl. ¶¶ 26, 28, Exs. E (12/8/17 pitch deck), G (12/31/17 pitch deck); *see also* Answer 4:4–5, 15–16.[3])

In the spring of 2018, Edelman and Service began to disagree about Service's role in the Documentary, particularly with respect to submitting to film festivals and sales efforts going forward. (*See* Countercl. ¶¶ 10–13.) Despite these tensions, on May 7, 2018, Edelman assured Service that he was not trying to renegotiate their agreement. (*Id.* ¶ 14.) On May 16, 2018, at their next meeting in the normal course of business, Edelman presented Service with a one-page agreement (the "Agreement"), which Edelman explained authorized Edelman to market and sell the Documentary. (*Id.* ¶¶ 15–17; Compl. ¶¶ 34–35.) The Agreement included the following provisions.

> 1. Jordan Service is to receive 20%, in perpetuity, of the sale of the Al Lubel Documentary currently titled "Mentally Al." His percentage is based on a 40/40/20 split between Al Lubel, Joshua Edelman, and Jordan Service. ["Profit-Sharing Provision" or "clause-1"]
>
> . . .
>
> 8. Joshua Edelman is 100% in control of all creative and financial decisions involving the documentary and comedy special.
> 9. Joshua Edelman maintains 100% of the rights to the intellectual property of the documentary and comedy special. ["Ownership Provisions"]

---

[2] Service does not use paragraphs in the Answer-portion of his responsive pleading. Thus, when citing Service's Answer, the Court cites page and line numbers.

[3] Service denies the allegations in paragraphs 26 and 28 of the Complaint only in part; he does not deny that he added the copyright notice or that it appears in the revised pitch deck.

(Compl. Ex. A ("Agreement"), ECF No. 1-1.) Edelman downplayed the significance of the Agreement, but Service could tell it was important to Edelman, and Service felt pressured to sign in order to keep the peace. (Countercl. ¶ 16.) Service was "reassured" that the first clause "establishe[d]" Lubel, Edelman, and Service as a "team," and confirmed "100 [sic] of the project belong[ed] to" the team "based on a 40/40/20 split." (*Id.*) He also observed, and was similarly reassured, that "[t]here was no mention of 'work for hire' nor 'transference of copyright.'" (*Id.*) Accordingly, Service signed the Agreement. (*See* Countercl. ¶¶ 16–17; Compl. ¶ 34; Answer 5:22.)

Sixteen months later, on September 1, 2020, Edelman's production company, Edelmania, entered into a ten-year exclusive license agreement with Comedy Dynamics, for "all distribution and exploitation rights of every kind in and relating to" the Documentary. (Compl. ¶¶ 1, 37.) Comedy Dynamics licensed the Documentary to various video-on-demand platforms, including Amazon and Vimeo. (*Id.*) Service denies "any specific knowledge" regarding these allegations. (Answer 9:21–23.) However, he alleges he was aware of the Comedy Dynamics deal, although he played no substantive part in the negotiations and never saw a "detailed plan" or formal paperwork relating to the deal. (*Id.*; Countercl. ¶¶ 21–29.)

On February 11, 2021, after attempting unsuccessfully to obtain more information regarding the Comedy Dynamics deal, Service registered the Documentary with the U.S. Copyright Office, designating himself, Lubel, and Edelman as co-authors. (Countercl. ¶ 40, Ex. D6 ("Service Copyright"), ECF No. 22.) On February 16, 2021, Edelman also registered the Documentary with the U.S. Copyright Office, designating himself as the sole author and sole copyright claimant. (Compl. ¶ 28, Ex. I ("Edelman Copyright"), ECF No. 1-9.) The pleadings do not suggest that either party was aware of the other's registrations at the time.

In the fall of 2021, Service consulted two attorneys, who advised him respectively to enforce his copyright and sue Edelman. (Countercl. ¶¶ 51–52.) On December 29, 2021, Service sent Amazon a takedown notice. (*Id.*; Compl. ¶ 47.) On

4

March 9, 2022, Service sent another takedown notice, this time to Vimeo under the Digital Millennium Copyright Act ("DMCA") ("Vimeo Takedown Notice"). (Compl. ¶ 53.) In response, Amazon and Vimeo both suspended distribution of the Documentary. (*See id.* ¶ 47, Exs. J, M, ECF Nos. 1-10, 1-13.)

### B. PROCEDURAL HISTORY

On April 12, 2022, Plaintiffs initiated this action, asserting causes of action for (1) declaratory relief; (2) misrepresentation under 17 U.S.C. § 512(f); (3) tortious interference with contractual relations; and (4) breach of contract. (*Id.* ¶¶ 54–78.) Service answered and counterclaimed, asserting causes of action for (1) declaratory relief; (2) breach of contract; and (3) misrepresentation under 17 U.S.C. § 201. (Countercl. ¶¶ 72–79.) Plaintiffs now seek judgment on the pleadings as to the Complaint and dismissal of Service's Counterclaim. (Mot. J.; Mot. Dismiss.) Service filed a single opposition brief, directly addressing only the motion to dismiss. (*See* Opp'n.) Plaintiffs construed the Opposition as opposing both motions and accordingly filed two replies. (Reply J., ECF No. 30; Reply Dismiss, ECF No. 29.)

### III. MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs move for judgment on the pleadings in favor of their four causes of action. (*See* Mot. J. 1–4.)

### A. LEGAL STANDARD

After the pleadings are closed, but early enough not to delay trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Although Rule 12(c) "does not expressly provide for partial judgment on the pleadings, neither does it bar such a procedure; it is common to apply Rule 12(c) to individual causes of action." *Mays v. Wal-Mart Stores*, 354 F. Supp. 3d 1136, 1141 (C.D. Cal. 2019).

When ruling on a motion for judgment on the pleadings, "[a]ll allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party." *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989), *cert. denied*, 493 U.S. 1079 (1990). Thus, "a plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Id.* Similarly, an affirmative defense will usually bar judgment on the pleadings, *id.*, unless it raises only questions of law, *RLI Ins. Co. v. City of Visalia*, 297 F. Supp. 3d 1038, 1056 (E.D. Cal. 2018).

**B.   DECLARATORY RELIEF**

In their first cause of action, Plaintiffs seek a declaration from the Court that: "(1) Edelman is the sole author of the [Documentary]; (2) Edelmania is the current copyright owner; (3) Service is not a joint author of the [Documentary]; and (4) the Agreement granted any potential copyright interest in the [Documentary] held by Service to Edelman." (Compl. ¶ 58; Mot. J. 1.) Service argues the Agreement did not transfer copyright, he remains a joint author and copyright holder, or alternatively that he signed the Agreement under false pretenses. (*See generally* Opp'n.)

As a preliminary matter, the Court cannot find that Edelmania is the current copyright holder based on the present pleadings. (*See* Compl. ¶ 58(2).) Service denies Plaintiffs' sole allegation that Edelman assigned his rights in the Documentary to Edelmania. (Compl. ¶ 1; Answer 1:15.) Moreover, nothing in the Agreement suggests that Edelman assigned his rights to Edelmania, and Plaintiffs offer no other support for such an assignment. The Court could, on this basis alone, deny Plaintiffs' motion for judgment on the pleadings on the first cause of action.

Nevertheless, Plaintiffs' motion fails on the first cause of action as to the other declarations they seek as well. Service denies Plaintiffs' allegations that Edelman is the sole author and owner of the Documentary, and also denies that the Agreement transferred Service's copyright interest to Edelman. (*See, e.g.*, Answer 7:23–8:4.) In

response to Service's denials, Plaintiffs argue that Service signed the Agreement, and the Agreement dispositively establishes that Edelman and Service are not joint authors or owners and that Edelman is the Documentary's sole author. (Mot. J. 1, 11.)

Plaintiffs are correct that, under the Copyright Act, authors may, by signing a written contract, manifest an intent to share or not share authorship of a work. *See Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968–70 (9th Cir. 2008) (citing *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000)). Plaintiffs are also correct that a valid contract evidencing an objective manifestation of intent may be dispositive of the question of joint authorship. *Id.* at 969. Here, however, Service raises fraud as an affirmative defense. (Answer 10:28.) He contends that Edelman misrepresented the nature of the Agreement and that Service signed it under false pretenses. (Opp'n 10; Countercl. ¶¶ 15–17.) Thus, Service disputes that the Agreement was validly formed, on the basis of fraud. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) ("[M]utual assent is a required element of contract formation."); *Gilkyson v. Disney Enters., Inc.*, 66 Cal. App. 5th 900, 916 (2021) ("The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties as it existed at the time they entered into the contract.").

"California law distinguishes between fraud in the 'execution' or 'inception' of a contract and fraud in the 'inducement' of a contract." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996). The first type, fraud in the execution or inception, requires that the "promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all." *Ford v. Shearson Lehman Am. Express, Inc.*, 180 Cal. App. 3d 1011, 1028 (1986). The second type, fraud in the inducement, requires that "the promisor knows what he is signing but his consent is induced by fraud." *Id.* (emphasis omitted). "[M]utual assent is present and a contract is formed," but where the misled party lacked a reasonable opportunity to learn the agreement's terms before signing, the fraud makes the contract voidable. *Id.*; *Rosenthal*, 14 Cal. 4th at 421.

Service concedes that he knew the Agreement was a contract when he signed it, so the fraud Service describes is not the first type, fraud in the execution. (*See* Answer 5:22–24 ("Service signed the [A]greement as informal . . . [and] was granting permission for Edelman to shop the film.").) Rather, the fraud Service describes is of the second type, fraud in the inducement. Service asserts that Edelman misrepresented the Agreement as "informal," to "grant Edelman the ability to sell the" Documentary. (*Id.* at 5:18–19.) Edelman had assured Service, "It's not about contract renegotiation," and Edelman had not previously expressed any "objection to the shared copyright." (*Id.* at 5:21–22.) Service asserts that the "document as represented [by Plaintiffs here] is not how the document was represented at the time of the signing." (*Id.* at 5:26–27.) When Service signed, he did not intend to transfer his copyright to Edelman or give Edelman sole authorship, but instead "was only agreeing to give Edelman creative control in edit writing and to shop the film to potential buyers." (*Id.* at 5:26–6:3.) Service also felt pressured to sign during the meeting, (*see* Countercl. ¶ 16); thus, an inference may be drawn that he did not have a reasonable opportunity to fully understand the Agreement's terms before signing.

Accepting the above allegations as true and construing them in the light most favorable to Service, Service raises questions of fact concerning the affirmative defense of fraud and the formation of the Agreement. Therefore, judgment on the pleadings as to the issues of authorship and ownership is not appropriate. *See Gen. Conf. Corp.*, 887 F.2d at 230 (observing that an affirmative defense will usually bar judgment on the pleadings). Accordingly, the Court **DENIES** judgment on the pleadings as to Plaintiffs' first cause of action.

C. **MISREPRESENTATION**

Plaintiffs move for judgment on the pleadings as to their second cause of action, misrepresentation under the DMCA. (Mot. J. 15–16.) Under the DMCA, any person who "knowingly materially misrepresents" that "material or activity is infringing" is liable for damages that result from the misrepresentation. 17 U.S.C. § 512(f). This

cause of action is limited to *knowing* misrepresentation and "[a] copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake." *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004).

Plaintiffs allege that Service violated 17 U.S.C. § 512(f) when he falsely represented in the Vimeo Takedown Notice that he possessed an exclusive right to the Documentary and that the Documentary's presence on Vimeo infringed that right. (Compl. ¶ 53.) Service denies this allegation, (Answer 7:15), but also alleges that he issued takedown notices, ostensibly on the advice of counsel, (*see* Countercl. ¶ 52). Reading these statements together, Service denies that the takedown notice included any misrepresentation. This denial is sufficient to bar judgment on the pleadings on this cause of action. Moreover, Service asserts he is a joint author of, and possesses a joint copyright in, the Documentary, and he has asserted an affirmative defense which, if proven, would release him from language in the Agreement suggesting otherwise. (*See* Answer 1:21, 5:23, 7:23–8:2; Countercl. ¶ 40.) Moreover, he asserts that he was aware of the Comedy Dynamics negotiations but expressed concerns about the deal and never saw final paperwork. (Answer 9:21–24, 10:4–9.) He also denies that Comedy Dynamics had the right to distribute the Documentary. (Answer 9:21–24.) Construing these allegations as true and in Service's favor, Service subjectively believed that he possessed an ownership interest and that he never approved the Comedy Dynamics deal. A reasonable inference may be drawn from these allegations that Service issued the Vimeo Takedown Notice in the good faith belief that he had an ownership interest that was being infringed.

Therefore, the Court **DENIES** judgment on the pleadings as to Plaintiffs' second cause of action for misrepresentation.

D.     TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

Plaintiffs move for judgment on the pleadings as to their third cause of action, tortious interference with contractual relations. (Mot. J. 16–17.) Plaintiffs allege

Service intentionally disrupted the Comedy Dynamics deal by sending the fraudulent takedown notices. (Compl. ¶¶ 65–72.) Under California law, the elements of this cause of action are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

The Court does not consider the first four elements because Plaintiffs fail to establish the fifth element, the fact of damage. Plaintiffs allege that Service's actions in issuing the takedown notices "substantially and irreparably" injured Plaintiffs. (Compl. ¶ 71.) Service denies this allegation. (Answer 8:22.) Service's denial creates a disputed issue regarding whether Plaintiffs were damaged by Service's actions. *See Fannon v. Nexicon, Inc.*, No. 2:09-cv-07773 DMG (FFMx), 2010 WL 11520549, at *2 (C.D. Cal. May 4, 2010) (denying plaintiff's motion for judgment on the pleadings where defendants denied elements of plaintiff's claims, including damages).

Thus, the Court **DENIES** judgment on the pleadings as to Plaintiffs' third cause of action.

### E.   BREACH OF CONTRACT

Plaintiffs move for judgment on the pleadings as to their fourth cause of action, breach of contract. (Mot. J. 17–18.) Plaintiffs allege that Service breached the Agreement by issuing takedown notices and filing for copyright registration. (Compl. ¶¶ 73–78.) Under California law, the elements for a breach of contract are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

As discussed above, Service raises questions regarding the formation of a valid contract, which defeats Plaintiffs' motion for judgment on the pleadings on this claim.

Moreover, and in the alternative, Plaintiffs' breach of contract claim suffers from the same infirmity as their tortious interference claim: Plaintiffs fail to establish the fact of damages. Plaintiffs allege that Service's breach of the Agreement caused Plaintiffs "substantial and irreparable" harm, by preventing them from exploiting the Documentary and receiving resulting revenues. (Compl. ¶ 78.) Service denies this allegation, (Answer 9:8), creating a dispute as to damages, *see Fannon*, 2010 WL 11520549, at *2.

Accordingly, the Court **DENIES** judgment on the pleadings as to Plaintiffs' fourth cause of action.

**F.    CONCLUSION—MOTION FOR JUDGMENT ON THE PLEADINGS**

The Court **DENIES** Plaintiffs' motion for judgment on the pleadings.

## IV.    MOTION TO DISMISS

Plaintiffs[4] move to dismiss all three of Service's counterclaims: (1) declaratory relief; (2) breach of contract; and (3) misrepresentation. (*See* Mot. Dismiss.)

**A.    LEGAL STANDARD**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the "minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim must be "plausible on its face" to avoid dismissal).

---

[4] Although Service does not specify against whom he asserts his counterclaims, the Court construes Service's claims as asserted against both Plaintiffs. (*See generally* Countercl.)

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the non-movant. *Lee*, 250 F.3d at 679 (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Pro se pleadings are to be construed liberally, but plaintiffs are "not excused from knowing the most basic pleading requirements." *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107 (9th Cir. 2000); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). In particular, a court may not "supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

**B.   DECLARATORY RELIEF**

In Service's first counterclaim for declaratory relief, he seeks a judicial declaration that (1) Lubel, Edelman, and Service are joint authors of the Documentary, (2) Edelman has no right to transfer the copyright from the group, (3) Edelmania has no exclusive claim to the copyright, and (4) the Agreement never transferred copyright and was breached by Plaintiffs. (Countercl. ¶¶ 72–74.)

Plaintiffs argue Service's first counterclaim should be dismissed because it is duplicative of Plaintiffs' first cause of action. (Mot. Dismiss 1.) However, Service's counterclaim seeks declarations that are subtly but materially different from Plaintiffs'. For instance, Service seeks a determination that Edelman has *no right to transfer* the copyright from the group, but Plaintiffs' declaratory relief claim does not directly contemplate whether Edelman had such a right. Also, Service seeks a determination that Edelmania has no *exclusive* claim to the copyright, while Plaintiffs

seek a determination that Edelmania is a current copyright owner. Thus, a close comparison of the claims establishes that Service's request for declaratory relief will not necessarily be resolved with Plaintiff's first cause of action.

Plaintiffs also argue that Service's first counterclaim fails on the merits because the Agreement identifies Edelman as the Documentary's sole author and owner. This argument fails for the same reasons as above, because Service raises questions of fact regarding the Agreement's formation.

Accordingly, the Court **DENIES** Plaintiffs' motion to dismiss Service's first counterclaim.

## C. BREACH OF CONTRACT

In his second counterclaim for breach of contract, Service alleges that Edelman breached the Agreement by "failing to provide accounting and subsequent paper work [sic] that would enforce clause-1," the Profit-Sharing Provision. (Countercl. ¶ 76(i)[5]; *see* Agreement § 1.) At this early pleading stage, and in view of Service's pro se status, the Court construes Service's breach of contract claim as pleaded in the alternative to his contract formation and fraud arguments discussed above.

As noted, to state a claim for breach of contract, Service must plead (1) the existence of the contract, (2) Service's performance or excuse, (3) Edelman's breach, and (4) Service's resulting damages. *Oasis W. Realty*, 51 Cal. 4th at 821. Service wholly fails to address the elements of his own performance and damages. Moreover, Service cannot establish Edelman's breach of the Agreement as alleged, because "clause-1" delineates profit sharing; by its plain language, it does not require Edelman to provide an accounting or paperwork.

Accordingly, the Court **GRANTS** Plaintiffs' motion to dismiss, and **DISMISSES** Service's second counterclaim.

---

[5] Service includes two paragraphs numbered 76 in the Counterclaim. The Court cites the first as 76(i) and the second as 76(ii).

### D. MISREPRESENTATION

In Service's third counterclaim for misrepresentation, Service alleges that Plaintiffs violated 17 U.S.C. § 201 by misrepresenting Edelman as the sole author of the Documentary. (Countercl. ¶¶ 76(ii)–79.) Plaintiffs, as Counter Defendants, correctly argue that § 201 does not provide a private right of action. (Mot. Dismiss 3, 18–19.) Section 201 is a series of rules addressing who owns the copyright in a given work under particular circumstances. Section 201 does not, on its face, provide any sort of right of action at all; other provisions of the Copyright Act do that by, e.g., providing remedies for violation of copyright. *See, e.g.*, 17 U.S.C. § 504. Service does not respond to this argument. (*See generally* Opp'n.) Therefore, the Court treats the argument as waived and the issue abandoned. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011). The Court **GRANTS** Plaintiffs' motion to dismiss, and **DISMISSES** Service's third counterclaim.

### E. LEAVE TO AMEND

Where a district court grants a motion to dismiss, it should generally provide leave to amend. *See* Fed. R. Civ. P. 15(a). Only where it is clear the complaint could not be saved by any amendment is leave to amend "properly denied." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court denies Plaintiffs' motion to dismiss Service's counterclaim for declaratory relief and grants dismissal of Service's counterclaims for breach of contract and misrepresentation. At this early pleading stage, the Court cannot conclude that amendment of the dismissed claims would be futile. Therefore, the Court **GRANTS** Service **LEAVE TO AMEND** those claims.

Service also seeks leave to assert new counterclaims, under 18 U.S.C. § 1341 or California Penal Code section 532. (Opp'n 8.) These are both criminal statutes that either are inapplicable to the facts or do not give rise to a private right of action. *See*

*Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004) (discussing that 18 U.S.C. § 1341 makes mail fraud a criminal offense); *Thymes v. Prime, Inc.*, No. 2:18-cv-02725-JAK (JCx), 2019 WL 13026773, at *4 (C.D. Cal. June 4, 2019) (reviewing cases stating § 1341 grants no private right of action); Cal. Pen. Code § 532 (criminalizing the fraudulent acquisition of "money, labor, or property, whether real or personal"). As such, leave to amend to assert these new counterclaims would be futile and is **DENIED**.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiffs' Motion for Judgment on the Pleadings as to Plaintiffs' Complaint. (ECF No. 25.) The Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Dismiss Service's Counterclaim, and **DISMISSES** Service's claims for breach of contract and misrepresentation **with leave to amend**. (ECF No. 24). Leave to amend is otherwise **denied**.

If Service elects to amend his Counterclaim, he must amend **within twenty-one (21) days of the date of this order**. Otherwise, this dismissal will convert to a dismissal with prejudice, and Service's Counterclaim will proceed only as to the first counterclaim for declaratory relief. Counter Defendants must respond to Service's Counterclaim, or amended Counterclaim if any, **within fourteen (14) days of Service's deadline to amend**.

Service is advised that the Federal Pro Se Clinic offers free information and guidance to individuals who are representing themselves in federal civil actions. The Los Angeles Clinic operates by appointment only. You may schedule an appointment either by calling the Clinic or by using an internet portal. You can call the Clinic at (213) 385-2977, ext. 270 or you can submit an internet request at the following site: http://prose.cacd.uscourts.gov/los-angeles. Clinic staff can respond to many questions with a telephonic appointment or through your email account. It may be more convenient to email your questions or schedule a telephonic appointment. Staff can

also schedule you for an in-person appointment at their location in the Roybal Federal Building and Courthouse, 255 East Temple Street, Suite 170, Los Angeles, California 90012.  Service is encouraged to visit the clinic or otherwise consult with an attorney prior to amending his Counterclaim.

      The parties shall submit a revised Joint Rule 26(f) report **within twenty-eight (28) days of the date of this order**.

      **IT IS SO ORDERED.**

January 26, 2023

_____
          **OTIS D. WRIGHT, II**
   **UNITED STATES DISTRICT JUDGE**